# UNITED STATES DISTRICT COURT
# FOR THE SOUTHERN DISTRICT OF WEST VIRGINIA
# AT BECKLEY

LEWIS CHEVROLET COMPANY,

    Plaintiff,

v.                                                  CIVIL ACTION NO. 5:23-cv-00534

MARY CHARLES SUTPHIN,

    Defendant.

## MEMORANDUM OPINION AND ORDER

Pending is Plaintiff Lewis Chevrolet Company's ("LLC") Amended Motion to Remand [Docs. 6, 7], filed September 5, 2023, and Defendant Mary Sutphin's Motion to Stay Pending Resolution of Its Motion to Remand [Docs. 11, 12], filed September 15, 2023.

**I.**

On November 3, 2017, Mary Sutphin instituted a state action against A. David Abrams, Jr., and others in the Circuit Court of Raleigh County (as amended, the "Original Lawsuit"). She requested an accounting of LCC. Ms. Sutphin also sought further, unspecified relief relating to her 80 shares of LLC's 394 total shares of stock pursuant to the terms of the Nancy Pat H. Lewis Heirs Trust (the "Trust"). [Doc. 1-1 at 7-8]. She filed a second amended complaint on February 3, 2022. Ms. Sutphin petitioned therein to remove LCC's directors and officers and for appointment of a receiver. [Doc. 1-1 at 9].

On March 24, 2022, LCC moved to dismiss. [Doc. 1-1 at 9]. In July 2022, LLC responded to Ms. Sutphin's discovery requests and indicated LCC's defense costs were $35,000, and the annual increased cost of replacement insurance is approximately $14,000. [Doc. 6-3]. On

September 28, 2022, the Circuit Court of Raleigh County granted LLC's motion to dismiss. [Doc. 1-1 at 9-10]. No appeal was taken. [Doc. 1-1 at 10].

On May 4, 2023, LCC instituted an action against Ms. Sutphin in the Circuit Court of Raleigh County. It personally served Ms. Sutphin on May 5, 2023. [Doc. 1-1 at 3]. LCC alleges that Ms. Sutphin's joinder of it in the Original Lawsuit was unreasonable, malicious, and predicated on harming LCC. [Doc. 1-1 at 9]. Specifically, LCC asserts three claims: (1) malicious prosecution for originally naming LCC as a defendant (2) malicious prosecution for continuing to pursue relief from it despite dismissal; and (3) tortious interference with the corporation's business through continued pursuit of the Original Lawsuit. [Doc. 1-1 at 12-14]. LCC seeks compensatory and punitive damages, along with "[a]n order enjoining Mary Charles Sutphin from continuing to maliciously prosecute LCC and tortiously interfere with its business." [Doc. 1-1 at 14].

On May 5, 2023, Ms. Sutphin filed an amended expert report in the Original Lawsuit that included her expert's conclusion that the "[t]otal due to [Ms. Sutphin]" is "$3,512,048." [Doc. 7-2 at 4].

On June 2, 2023, Ms. Sutphin filed a Motion to Dismiss this action, which was then still in the Circuit Court of Raleigh County. [Doc. 1-2 at 12]. On June 5, 2023, Ms. Sutphin served LCC with discovery requests, including a request for admission that LCC "sustained *no more than* $75,000 in total damages as a result of the conduct alleged in its Complaint." [Doc. 1-3 at 23 (emphasis in original)]. [Doc. 1-3 at 1-25]. LCC responded on July 10, 2023, as follows: "It is clear from the face of Plaintiff's Complaint that Plaintiff sustained more than $75,000 in damages, including, without limitation, the value of the injunctive relief sought, so this request is therefore denied." [Doc. 1-3 at 55].

On August 9, 2023, Ms. Sutphin removed. [Doc. 1]. On September 5, 2023, LCC

2

filed an Amended Motion to Remand [Doc. 6], followed by a Motion to Stay Pending Resolution of Its Motion to Remand [Doc. 11], filed on September 15, 2023.

## II.

Title 28 U.S.C. § 1446 specifies the procedure for removing civil actions to federal court. The pertinent provisions are recited below:

> **(a) Generally**.--A defendant . . . desiring to remove . . . from a State court shall file . . . a notice of removal . . . containing a short and plain statement of the grounds for removal, together with a copy of all process, pleadings, and orders served upon such defendant or defendants in such action.
>
> **(b) Requirements; generally.**--(1) The notice of removal . . . shall be filed within 30 days after the receipt by the defendant, through service or otherwise, of a copy of the initial pleading setting forth the claim for relief upon which such action or proceeding is based, or within 30 days after the service of summons upon the defendant if such initial pleading has then been filed in court and is not required to be served on the defendant, whichever period is shorter.
>
> . . . .
>
> (3) Except as provided in subsection (c), if the case stated by the initial pleading is not removable, a notice of removal may be filed within 30 days after receipt by the defendant, through service or otherwise, of a copy of an amended pleading, motion, order or other paper from which it may first be ascertained that the case is one which is or has become removable.
>
> **(c) Requirements; removal based on diversity of citizenship.**--
>
> . . .
>
> (2) If removal of a civil action is sought on the basis of the jurisdiction conferred by section 1332(a), the sum demanded in good faith in the initial pleading shall be deemed to be the amount in controversy, except that--
>
>> (A) the notice of removal may assert the amount in controversy if the initial pleading seeks--
>>
>>> (i) nonmonetary relief; or
>>>
>>> (ii) a money judgment, but the State

3

>> practice either does not permit demand for a specific sum or permits recovery of damages in excess of the amount demanded;
>
> and
>
> (B) removal of the action is proper on the basis of an amount in controversy asserted under subparagraph (A) if the district court finds, by the preponderance of the evidence, that the amount in controversy exceeds the amount specified in section 1332(a).
>
> (3)(A) If the case stated by the initial pleading is not removable solely because the amount in controversy does not exceed the amount specified in section 1332(a), information relating to the amount in controversy in the record of the State proceeding, or in responses to discovery, shall be treated as an "other paper" under subsection (b)(3).

28 U.S.C.A. § 1446(a), (b)-(c); *see Caterpillar Inc. v. Lewis*, 519 U.S. 61, 69 (1996); *Northrop Grumman Tech. Servs., Inc. v. DynCorp Int'l LLC*, 865 F.3d 181, 186 (4th Cir. 2017).

So, a defendant must remove within (1) 30 days after receiving a complaint with a specific monetary demand exceeding the jurisdictional threshold; (2) 30 days after receiving a complaint that -- by a preponderance of the evidence -- seeks (a) nonmonetary relief, (b) an unspecified monetary demand, or (c) a specific monetary demand below the jurisdictional threshold but subject to lawful increase; or (3) 30 days after defendant receives a pleading, motion, order or other paper first demonstrating removal is appropriate.[1] 28 U.S.C. §§ 1446(b), (c)(2)-(3); *see Dart Cherokee Basin Operating Co., LLC v. Owens*, 574 U.S. 81, 88 (2014); *Francis v. Allstate Ins. Co.*, 709 F.3d 362, 367 (4th Cir. 2013); *Lovern v. Gen. Motors Corp.*, 121 F.3d 160, 162 (4th

---

[1] In West Virginia, a specific monetary demand is prohibited in personal injury and wrongful death actions. *See* W. Va. Code § 55-7-25; *Scaralto v. Ferrell*, 826 F. Supp. 2d 960, 969 (S.D. W. Va. 2011) ("These attributes are particularly important now that fewer complaints contain an *ad damnum* clause as a result the West Virginia legislature's adoption of West Virginia Code § 55–7–25.").

4

Cir. 1997). The removing party must establish the amount in controversy by allegations in the notice of removal and, if challenged, by a preponderance of the evidence. 28 U.S.C. § 1446(c)(2)(B); *Dart Cherokee Basin,* 574 U.S. at 88.

Removability hinges "upon the state of the pleadings and the record at the time of removal . . . ." *Francis*, 709 F.3d 362, 367 (4th Cir. 2013) (quoting *Alabama Great S. Ry. Co. v. Thompson*, 200 U.S. 206, 216 (1906). "In this circuit, it is settled that the test for determining the amount in controversy in a diversity proceeding is 'the pecuniary result to either party which [a] judgment would produce.'" *Dixon v. Edwards*, 290 F.3d 699, 710 (4th Cir. 2002) (quoting *Gov't Employees Ins. Co. v. Lally,* 327 F.2d 568, 569 (4th Cir. 1964)).

If "the State practice either does not permit demand for a specific sum or permits recovery of damages in excess of the amount demanded," as does West Virginia, "the notice of removal may assert the amount in controversy." 28 U.S.C. § 1446(c)(2)(A)(ii). Likewise, a notice of removal may assert the amount in controversy if "the initial pleading seeks nonmonetary relief." *Id.* § 1446(c)(2)(A)(i). Courts thus routinely include the value of injunctive relief in determining the amount in controversy. *See Hunt v. Wash. State Apple Advert. Comm'n*, 432 U.S. 333, 347 (1977) ("In actions seeking declaratory or injunctive relief, it is well established that the amount in controversy is measured by the value of the object of the litigation.").

### III.

Strictly construing the federal removal statutes, *Maryland Stadium Auth. v. Ellerbe Becket Inc.*, 407 F.3d 255, 260 (4th Cir. 2005), Ms. Sutphin was required to remove this action by June 5, 2023, unless "the case stated by the initial pleading [was] not removeable." 28 U.S.C. § 1446(b)(3). If such were the case, Ms. Sutphin had 30 days following the receipt of the "other paper from which it [could] first be ascertained that the case is one which is or has become

removable" to remove this action. *Id.* (emphasis added).

Ms. Sutphin claims her removal was timely because LCC's discovery responses are the "other paper" that started the removal clock. But for the Court to treat the discovery responses in this case as an "other paper" pursuant to 28 U.S.C. § 1446(b)(3), the initial pleading must not be "removable solely because the amount in controversy does not exceed [$75,000]."[2] 28 U.S.C. § 1446(c)(3)(A). That is not so here.

It is clear from the face of the Complaint that LCC seeks damages in excess of $75,000. LCC seeks compensatory damages, consequential damages, punitive damages, legal fees, and injunctive relief. [Doc. 1-1 at 5-15]. If LCC were to obtain its requested injunction, it would foreclose Ms. Sutphin's ability to recover more than $3.5 million in her state-court lawsuit. [Doc. 7 at 11]. Ms. Sutphin expressly acknowledged as much in her state-court Motion to Dismiss filed on June 2, 2023, 28 days after she was served. [*See Id.*] Specifically, Ms. Sutphin's June 2, 2023, motion states:

> [LLC's] claim for "tortious interference" and request for an injunction to prevent Ms. Sutphin from proceeding with her claims in Raleigh Co. Civil Action No. 17-C-591 presume that Ms. Suphin's claims have no merit even though they are still pending and have not been adjudicated. Plaintiff is merely attempting to relitigate the Motions to Dismiss [LCC] and the other Defendants filed in Raleigh Co. Civil Action No. 17-C-591 (which the Circuit Court largely denied). [LCC] is also attempting to avoid a determination of the merits of Ms. Sutphin's claims against the Defendants in Raleigh Co. 17-C-591.

[Doc. 1-2 at 12]. Ms. Sutphin thus established that she knew within 30 days of service that the "pecuniary result" to her if LCC obtained the requested injunction would be a loss of approximately $3.5 million.

Moreover, Ms. Sutphin learned in LCC's July 2022 discovery responses in the

---

[2] It is undisputed that complete diversity of citizenship exists for purposes of 28 U.S.C. § 1332(a).

6

Original Lawsuit that the LCC's defense costs were $35,000 and the annual increased cost of replacement insurance is approximately $14,000. [Doc. 6-3]. Thus, Ms. Sutphin's assertion that she learned of these expenses "only after Plaintiff answered Ms. Sutphin's discovery requests" in this action is without merit. [Doc. 13 at 15–16.] Ms. Sutphin had this specific information for nearly a year at the time she was served in May 2023. Thus, it is unreasonable to assume that when added to LCC's other requested forms of relief, including punitive damages and loss profits, the total amount in controversy would remain below $75,000 as a matter of law. *See Baldau v. Jonkers*, 229 W. Va. 1, 12–13, 725 S.E.2d 170, 181–82 (2011) (affirming punitive damage award of $15,000 against each defendant in malicious prosecution case); *C.W. Dev., Inc. v. Structures, Inc. of West Virginia*, 185 W. Va. 462, 467, 408 S.E.2d 41, 46 (1991) (affirming punitive damage award of $75,000 for tortious interference claim).

The Court **FINDS** that LCC's Complaint in this action was removable when served. Thus, Ms. Sutphin's August 9, 2023, removal was untimely.

Accordingly, the Court **GRANTS** Plaintiff LCC's Amended Motion to Remand [**Doc. 6**] this action to the Circuit Court of Raleigh County, and **DENIES AS MOOT** Plaintiff's Motion to Stay Pending Resolution of Its Motion to Remand [**Doc. 11**].

The Court **DIRECTS** the Clerk to send a copy of this Order to counsel of record, to any unrepresented party, and to the Clerk of the Circuit Court of Raleigh County.

ENTER: December 13, 2023

Frank W. Volk
United States District Judge